USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/9/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN DINGEE,

                Plaintiff,

    -against-

METRO-NORTH COMMUTER RAILROAD,

                Defendant.

No. 21-cv-221 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Kevin Dingee ("Plaintiff" or "Dingee") commenced this action against Defendant Metro-North Commuter Railroad ("Defendant" or "Metro-North"), asserting a claim for a violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. (Complaint ("Compl."), ECF No. 1.) Presently before the Court is Defendant's motion for summary judgment. For the following reasons, the Court DENIES Defendant's motion for summary judgment.

**BACKGROUND**

**I.    Factual Background**

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. All facts are undisputed unless otherwise noted.

Kevin Dingee is a laborer who has worked for Metro-North since March 20, 2000. (Defendant's Rule 56.1 Statement ("Def. 56.1") at ¶ 3, ECF No. 19.) Starting in 2010, Dingee worked at a Metro-North train station located in Poughkeepsie, New York. (*Id.* at ¶ 4.) At the Poughkeepsie station, Dingee had three supervisors: John Dorney ("Dorney"), Terry Cuddy

("Cuddy"), and Nick Potenza ("Potenza").   (Plaintiff's Rule 56.1 Counterstatement ("Plf. Counter") at ¶ 20, ECF No. 21.)

Two or three times a week since 2010, Dingee would move supplies from the storage room—located on the third floor—to the first floor.  (Def. 56.1 at ¶ 7; Dingee Dep. Tr. 48:2-6.) To do so, he would take the elevator to the third floor, push a red hand cart up a ramp to the supply room, load the supplies on the cart, and transport the supplies back down the ramp and into the elevator to the first floor.  (Def. 56.1 at ¶ 6; Dingee Dep. Tr. 48:2-6.)   Over the span of eight years—from 2010 until February 5, 2018—Dingee was not involved in any accidents while transporting supplies up and down the ramp.  (Def. 56.1 at ¶ 9.)

Over the course of those eight years, Dingee transported supplies down the ramp by placing himself between the cart and the bottom of the ramp, grabbing the cart with both hands, and slowly stepping backwards until he reached the bottom of the ramp.  (Dingee Dep. Tr. 48:2-6.)  Sometime before February 5, 2018, Cuddy instructed Dingee to place himself between the cart and the *top* of the ramp, grabbing the cart with one hand and the ramp railing with the other, and slowly stepping forward until he reached the bottom of the ramp.[1]   As stated in the Metro-North safety rules (*see* Dingee Dep. Tr. 101:6-105:3 (quoting Dingee Dep. Ex. J, Metro-North Safety Rules §§ 200.01, 1800.1.1, 1800.3.2)), Dingee was instructed to always "take the safest course of action" (Metro-North Safety Rules § 200.01), especially when confronted with a load that "exceeds lifting capability" (Metro-North Safety Rules § 1800.1.1).

One of these rules warned employees not to "overload or load hand truck or cart unsafely." (*Id.* at § 1800.3.2)  The rules, however, do not specify how much weight is too much to place on

---

[1] Plaintiff testified that Cuddy instructed him on the new method the week of February 5, 2018.  (Dingee Dep. Tr. 66:6-10.)  Cuddy testified that he did not know when he told Plaintiff to adopt the new method.  (Cuddy Dep. Tr. 24:6-10.)

the cart; Dingee's supervisors likewise provided no clear guidance on how much weight to load onto the cart.  Dorney testified "[t]here's not a specific weight" at which the cart becomes too heavy (Dorney Dep. Tr. 55:15-56:10), Potenza agreed that even a "light load should still not be taken down the [ramp]" (Potenza Dep. Tr. 22:12-14), and Cuddy could not provide a "specific number" for what constituted a "lite load" [sic] that an employee could transport down the ramp (Cuddy Dep. Tr. 23:8-21).  When a load is too heavy to cart down the ramp, the parties agree the supplies should not be rolled down the ramp but rather unloaded on the elevated platform and then transferred from the elevated platform to an empty cart parked adjacent to and below the platform. (*See, e.g.,* Dingee Dep. Tr. 81:21-82:10.)  But the parties disagree on when employees were trained to follow this protocol: Dingee's supervisors contend Dingee was aware of the protocol well before February 5, 2018, while Dingee believes the protocol was implemented after February 5, 2018. (*Compare* Plf. Counter at ¶ 33 *with* Defendant's Response to Plaintiff's Rule 56.1 Counterstatement at ¶ 33, ECF No. 23.)

On February 5, 2018, Dingee worked a night shift at the Poughkeepsie train station.  (Def. 56.1 at ¶ 5.)  Dingee was instructed that night to transport supplies from the supply room to the first floor.  (Def. 56.1 at ¶ 6.)  To that end, he walked the cart to the supply room and loaded it up with supplies.  (Dingee Dep. Tr. 55:3-64:25.)  Dorney estimated that the cart weighed over 200 pounds (Dorney Dep. Tr. 52:1-9), but Dingee testified that the cart weighed less than carts he had previously backed down the ramp (Dingee Dep. Tr. 79:12-14).  Dingee then proceeded to the top of the ramp.  (Dingee Dep. Tr. 65:4-21.)  Standing at the top of the ramp with the cart and the ramp in front of him, Dingee held the cart with one hand and the adjacent railing with his other hand. (*Id.*)  As the rear wheels of the cart cleared the top edge of the ramp, the cart lunged forward and tugged Dingee forward in the process.  (*Id.*)  Dingee let go of the cart, but the force of the cart's

forward lunge pulled and injured Dingee's shoulder, resulting in cervical herniation.  (*Id.*; ECF No. 17-3 at ¶ 11.)

## II.    Procedural History

Plaintiff filed this action on January 11, 2021, alleging a sole tort claim under FELA.  (ECF No. 1.)  After the parties completed discovery, Defendant filed the present motion for summary judgment on Plaintiff's claim.[2]

## LEGAL STANDARDS

## I.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986).  "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law."  *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted).  In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "Conclusory statements, conjecture or speculation by the party

---

[2] All motions were fully briefed as of May 9, 2022.  (Defendant's Motion for Summary Judgment, ECF No. 16; Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem."), ECF No. 24; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plf. Opp."), ECF No. 20; Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("Def. Reply"), ECF No. 22.)

resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

A FELA claim "must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Gadsden v. Port Authority Trans–Hudson Corp.*, 140 F.3d 207, 209 (2d Cir. 1998); *see Williams v. Long Island R.R. Co.*, 196 F.3d 402, 407 (2d Cir. 1999) ("The right of the jury to pass on factual issues must be liberally construed.") (internal quotations omitted); *Gallose v. Long Island R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989) ("Only in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law.").

## DISCUSSION

The Federal Employers' Liability Act states in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of

such carrier, or by reason of any defect or insufficiency, due to its negligence, in its
cars, engines, appliances, machinery, . . . or other equipment.

45 U.S.C. § 51.  A railroad employer owes "a duty to provide its employees with a safe workplace,

which it has breached if it knew or should have known of a potential hazard in the workplace, and

yet failed to exercise reasonable care to inform and protect its employees." *Tufariello v. Long

Island R.R.*, 458 F.3d 80, 87 (2d Cir. 2006).  "[A] relaxed standard of negligence applies in FELA

cases in this Circuit." *Williams*, 196 F.3d at 406; *accord Kendall v. Metro-North Commuter R.R.*,

No. 12 Civ. 6014 (DLC), 2014 WL 1884428, at *7 (S.D.N.Y. May 12, 2014).  Thus, "an employer

may be held liable under FELA for risks that would otherwise be too remote to support liability at

common law," *Tufariello*, 458 F.3d at 87 (quoting *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d

54, 58 (2d Cir. 1996)), as "the quantum of evidence that suffices in FELA cases is significantly

lower than in ordinary torts cases," *Nelson v. Metro-North Commuter R.R.*, 235 F.2d 101, 106 (2d

Cir. 2000).  Likewise, FELA's language on causation "is as broad as could be framed." *CSX

Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (citing *Urie v. Thompson*, 337 U.S. 163, 181

(1949)).  "Given the breadth of the phrase 'resulting in whole or in part from the [railroad's]

negligence,' and Congress' humanitarian goals, . . . in comparison to tort litigation at common law,

a relaxed standard of causation applies under FELA." *Id.* at 691–92.  Thus, "the test of a jury case

is simply whether the proofs justify with reason the conclusion that employer negligence played

any part, even the slightest, in producing the injury ... for which damages are sought." *Id.* at 692

(quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)).  This test has displaced common

law standards of proximate causation.  *Id.* at 696.  "Circumstantial evidence, expert testimony, or

common knowledge may provide a basis from which the causal sequence may be inferred." *Ulfik*,

77 F.3d at 60; *cf. Williams*, 196 F.3d at 407 ("[U]nder FELA the jury's power to draw inferences is greater than in common-law actions.") (internal quotation marks and citation omitted).

Plaintiff advances under three theories of negligence: (1) "Defendant was negligent when it unreasonably changed to a less safe procedure," (2) "Defendant breached its duty when it failed to provide reasonable means to move supplies and equipment," and (3) "Defendant breached its duty to train [Plaintiff]." (Plf. Opp. at 9–10.) In response, Defendant argues that "Plaintiff's decision to proceed as he did, despite safer alternatives, was the sole cause of his injury." (Def. Reply at 7.)

Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendant failed to provide safer equipment, like a forklift or pallet jack. Plaintiff never experienced an accident while using a hand cart prior to February 5, 2018 (Def. 56.1 at ¶ 9), and he produces no evidence to suggest guiding the cart forward down the ramp would prove unsafe if he had transported a lighter load than the one he transported on the night of his accident. In other words, Plaintiff has failed to show the same accident would have occurred if he had used a hand cart to guide a lighter load—or no load at all—down the ramp. Without more, Plaintiff cannot show Defendant's equipment contributed to unsafe working conditions. *See Droll v. CSX Transp., Inc.*, No. 11CV514, 2012 WL 5289591, at *2 (N.D. Ohio Oct. 25, 2012) (quoting *Atlantic Coast Line R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir.1951)) (explaining that Plaintiff had "no duty to provide the best, safest, or most up-to-date equipment or work methods").

Plaintiff, however, exposes a gap in Defendant's protocols and training. Even assuming Defendant's account of the facts, Plaintiff was—at-best—aware of Defendant's instructions on (1) how to handle heavy objects (i.e., place the objects on the elevated platform and transfer to the cart parked below) and (2) how to guide the cart down the ramp. But Plaintiff was not trained on when

a cart is too heavy to safely guide down the ramp.  Whereas Potenza testified that an employee should never place any weight on the cart when guiding it down the ramp (Potenza Dep. Tr. 22:12-14), Dorney and Cuddy both suggested that light loads could be guided down the ramp—though neither could estimate how much weight is too much to safely guide down the ramp (Dorney Dep. Tr. 55:15-56:10; Cuddy Dep. Tr. 23:8-21).  In effect, this gap in Defendant's instructions placed Plaintiff in the uncomfortable position of figuring out which loads were light enough to guide down the ramp and which were too heavy.  Because Plaintiff had successfully *backed* heavier carts down the ramp during the hundreds of times he had transported supplies from the supply room (Dingee Dep. Tr. 79:12-14), he understandably believed the cart's weight was not excessive and could be guided forward down the ramp (*e.g., id.* at 103:17-23).  Without the benefit of experience guiding the cart *forward* down the ramp, Plaintiff was unaware the load exceeded his physical capabilities.

As evidenced by its own safety rules (*see* Dingee Dep. Tr. 101:6-105:3 (quoting Dingee Dep. Ex. J, Metro-North Safety Rules §§ 200.01, 1800.1.1, 1800.3.2)), Defendant had actual knowledge that loading excessive weight onto a cart could pose a danger to its employees.  *See Coale v. Metro-N. Commuter R. Co.*, 621 F. App'x 13, 14–15 (2d Cir. 2015) (quoting *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993)) (requiring "proof of actual or constructive notice to the employer of the defective condition that caused the injury").  But despite this actual knowledge, Defendant offered contradictory instructions on how much weight is too much weight to guide down the ramp (Potenza Dep. Tr. 22:12-14; Dorney Dep. Tr. 55:15-56:10; Cuddy Dep. Tr. 23:8-21).  Moreover, it is plainly evident the danger involved in using just one arm to slow a cart's downward momentum while guiding that cart down the ramp.  *Cf. Soliman v. Maersk Line Ltd*, 235 F. Supp. 3d 410, 419–420 (E.D.N.Y. 2017) ("It is well established that pulling may result

in serious injuries. During a pull, an individual places pressure on their arm, shoulder, and back. Depending on the size, weight, and shape of the object being pulled, this can result in a host of injuries, including a torn rotator cuff. . . . Common sense states, in no uncertain terms, that pulling heavy, awkward, or unwieldy objects can result in injury. Common sense further dictates that pulling with a single outstretched arm, extending directly from the shoulder, in conjunction with a twist of the back, is dangerous. These dangers could have been mitigated through proper training.").  Although Plaintiff may bear responsibility for failing to use his years of experience to properly assess the weight of the cart and thus the safety of his actions, a reasonable juror could find Defendant breached its duty to provide a safe workplace by implementing a new protocol without specific instructions on how much weight is excessive to pull against the force of gravity. *See id.* at 419–421 (finding shipowner was negligent in failing to train seaman on the dangers of "pulling" weight, while reducing seaman's recovery because he was comparatively negligent in "[f]ailing to use his own training to minimize the risk of injury").  In addition, a reasonable juror could infer Plaintiff's injury was caused, at least in part, by Plaintiff's decision to follow Defendant's protocol, for which Defendant did not provide specific enough instructions.  *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)) ("[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.").  As such, this Court denies Defendant's motion for summary judgment.

## CONCLUSION

Defendant's motion for summary judgment is DENIED.

The parties are directed to appear for a telephonic pre-trial conference on March 28, 2023, at 2:00 p.m.  To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; and (3) Press pound (#) to enter the teleconference as a guest.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 16.

Dated:   March 9, 2023                                              SO ORDERED:
            White Plains, New York

                                                     _____
                                                            NELSON S. ROMÁN
                                                         United States District Judge